**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERNARD GELB,<br><br>                    Plaintiff,<br><br>                         v.<br><br>U.S. DEPARTMENT OF DEFENSE, *et al.*,<br><br>                    Defendants. | Case No. 23-cv-995 (JMC) |

**MEMORANDUM OPINION**

Plaintiff Bernard Gelb, proceeding pro se, brings this suit against the Department of Defense (Defense), Defense Finance and Accounting Service (DFAS), Secretary of Defense Lloyd J. Austin III, and Defense's Chief Freedom of Information Act (FOIA) Officer Joo Y. Chung (collectively, "Defendants"). ECF 12.[1] Gelb brings two claims. *Id.* ¶¶ 99–115. First, he alleges that Defendants automatically cancel checks after six months if they are not cashed, without notice to the checks' recipients, in violation of the Due Process and Takings Clauses of the Constitution (Count I). *Id.* ¶¶ 99–106. Second, he alleges that Defendants failed to search for and produce records responsive to his FOIA request (Count II). *Id.* ¶¶ 107–115. Defendants move to dismiss Count I on several grounds, including that Gelb lacks standing. ECF 16. In response, Gelb moves for summary judgment on both Counts I and II, ECF 19, and Defendants counter with their own motion for summary judgment on both counts, ECF 24. Gelb also moves to strike several of Defendants' filings. ECF 31.

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

Because Gelb lacks standing to bring his constitutional claims and Defendants did comply with the FOIA's requirements, the Court will **GRANT** Defendants' motion to dismiss Count I pursuant to Federal Rule of Civil Procedure 12(b)(1), ECF 16, **GRANT** Defendants' cross-motion for summary judgment on Count II, ECF 24, and **DENY** Gelb's cross-motion for summary judgment, ECF 19. The Court will also **DENY** Gelb's motion to strike. ECF 31.

## I.    BACKGROUND

Gelb is a resident of New York who "specializes in finding persons to whom the Government owes money and helping th[o]se persons obtain the funds to which they are entitled." ECF 12 ¶ 30. He alleges that Defendants "cancel all checks that remain outstanding six (6) months after the date of issuance, without any notice to the payee who is the owner ("Owner") of the canceled checks proceeds or money outstanding." *Id.* ¶ 43. He estimates that Defendants have issued "about $500 million dollars in uncashed checks outstanding and unclaimed." *Id.* ¶ 48.

In March 2021, Gelb submitted a FOIA request to DFAS (a Department of Defense agency), requesting the following:

> [A] search for all – Outstanding and Unpresented Checks not submitted for payment – stale-dated outstanding check lists . . . specifically, businesses, contractors, suppliers and vendors checks issued and payable in the years 2017, 2018, 2019, 2020 that are still outstanding and unpaid as of the date my FOIA search is processed for responsive documents. Please also include any Electronic Fund Transfer (EFT) payments that were made or were attempted and failed. To simplify this FOIA request, please search for all checks or ETF outstanding with a value of $100,000.00 and higher. Please eliminate from this list, any checks or electronic payments that have been actually paid or re-issued.

ECF 12-1 at 3. He asked that the resulting report include the following information:

1.  ALC – Agency Location Code
2.  Check Number
3.  Payment Date
4.  Cancel Date

      5.  Payment Amount
      6.  Invoice Number
      7.  Vendors, Suppliers, Businesses and Contractors, Name and Address
      8.  Agency Account Number Symbol

*Id.*

      Gelb specified that the agency should "search the Defense Finance and Accounting Service Procurement [] Integrated Enterprise Environment (PIEE) computer database for the responsive documents." *Id.* He stated that his FOIA request "can be done in the PIEE databases background and without any expense to DFAS because . . . DFAS would only be performing queries within its PIEE database and utilizing existing software." *Id.* at 4.

      DFAS responded to Gelb's request in April 2021, explaining that it had no existing responsive records or reports. ECF 12-1 at 35. "To produce responsive records," DFAS explained, "would require the coordination of multiple disbursing locations, systems, and the creation of database queries to generate a report solely for responding to your specific request." *Id.* Because this process would be burdensome, the agency estimated that it would cost Gelb, at minimum, $4,608 in processing fees. *Id.* at 35–36. DFAS stated that if Gelb wished to proceed with his request, he should submit a statement indicating his willingness to pay those fees. *Id.* at 35. Gelb responded in October 2021, stating that he wished to proceed with his FOIA request and was willing to pay the estimated fees. *Id.* at 39.

      A few weeks later, the agency determined that it was in fact unable to fulfill Gelb's request because it "does not have a way to track if payments have cleared." ECF 24-2 ¶ 22; ECF 24-5 at 1. On October 29, 2021, FOIA Program Manager Gregory Outlaw spoke with Gelb on the phone "to explain that DFAS could not fulfil his request as previously stated because [it had] determined that the requested records did not exist and could not readily be compiled from existing sources." ECF 24-2 ¶ 24.

In January 2022, Gelb emailed DFAS stating that the agency had constructively denied his March 2021 FOIA request by failing to provide responsive records, and appealing that constructive denial. ECF 12-1 at 41–42. Gelb filed this suit in May 2023 and amended his complaint in August 2023. ECF 1; ECF 12. He alleges that Defendants' policy of canceling outstanding checks after six months without providing notice to owners is unconstitutional (Count I), and that Defendants violated the FOIA by "fail[ing] to search the PIEE database and produce responsive record[s] to [his] March 11, 2021 FOIA Request" (Count II). ECF 12 ¶¶ 99–115.

In September 2023, Outlaw "realized that [he] had forgotten to send an official written response for 'no records'" to Gelb after their October 2021 phone call. ECF 24-2 ¶ 26. On September 15, 2023, DFAS sent Gelb a letter formally stating that it was unable to locate records responsive to his request. ECF 24-7 at 1. Gelb responded via email that same day dismissing Outlaw's response.[2] ECF 24-8 at 1.

Defendants filed a partial motion to dismiss, asking the Court to dismiss Count I for lack of standing, improper venue, and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). ECF 16. The Court issued a *Fox* order advising Gelb of his obligations in responding to that motion. ECF 17. Gelb responded by filing a cross-motion for summary judgment on both Counts I and II. ECF 19. Defendants, in turn, opposed Gelb's motion for summary judgment and filed a cross-motion for summary judgment of their own on both Counts I and II. ECF 24. The Court issued a *Neal* order, again advising Gelb of his obligations in responding to Defendants' cross-motion. ECF 26. Gelb filed an opposition, ECF 29, and

---

[2] That email stated: "We are in litigation. Nice try but it won't work. You are years too late The record before the court is no response. No denial letter. No response to my appeal. No response to my email informing you of litigation. And copies were sent to your general counsel. No search was ever conducted for relevant documents during the relevant period of time. I have a copy of all your manuals and the information is there. I want to see someone dumb enough to sign a false affidavit, and suborn perjury." ECF 24-8 at 1.

Defendants filed a reply, ECF 30. After all three motions were fully briefed, Gelb filed a motion to strike Defendants' cross-motion for summary judgment, their reply in support of their cross-motion for summary judgment, and their combined response to his own statement of material facts and reply statement of material facts. ECF 31. The Court permitted Gelb to file a reply statement of material facts. *See* Nov. 18, 2024 Minute Order; ECF 36.

## II.     LEGAL STANDARD

Defendants move to dismiss Count I pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6). ECF 16. Because Gelb does not have standing to bring Count I, the Court need only address Defendants' 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Both parties cross-move for summary judgment on Counts I and II pursuant to Rule 56. ECF 19; ECF 24.

### A.     Rule 12(b)(1)

When assessing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "[i]t is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The court accepts the complaint's allegations as true, *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015), and "where necessary . . . may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts," *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Because Gelb is proceeding pro se, the Court considers his complaint "in light of all filings, including filings responsive to a motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015). Complaints filed by pro se litigants are "held to less stringent standards than formal pleadings drafted by lawyers," but still "must plead factual matter that

permits the court to infer more than the mere possibility of misconduct." *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009).

### B. Rule 56

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court will grant a motion for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences" in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "When parties file cross-motions for summary judgment, each motion is viewed separately, in the light most favorable to the non-moving party, with the court determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Howard Town Ctr. Dev., LLC v. Howard Univ.*, 267 F. Supp. 3d 229, 236 (D.D.C. 2017).

In FOIA cases, it is the defending agency's burden to prove it has complied with its obligations under the statute. *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). A court may rely on the agency's "relatively detailed and non-conclusory" affidavits or declarations to resolve a FOIA case. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Such affidavits "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Id.* (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III.    ANALYSIS

The Court first addresses, and denies, Gelb's motion to strike. ECF 31. The Court then turns to Gelb's FOIA claim, Count II, and concludes that Defendants are entitled to summary judgment because they do not maintain the report Gelb seeks and the FOIA does not require them to create new records. Finally, the Court determines that Gelb lacks standing to bring his constitutional claims and therefore dismisses Count I for lack of subject matter jurisdiction.

### A.  Motion to Strike

"Motions to strike are 'drastic remedies that courts disfavor,' . . . and the trial judge has discretion to either grant or deny the motion." *McFadden v. Wash. Metro. Area Transit Auth.*, 204 F. Supp. 3d 134, 139 (D.D.C. 2016) (quoting *Riddick v. Holland*, 134 F. Supp. 3d 281, 285 (D.D.C. 2015)). First, Gelb asks the Court to strike Defendants' reply filed in support of their motion for summary judgment, ECF 30, arguing that it is in fact a second unauthorized reply or surreply in support of Defendants' motion to dismiss, ECF 31 at 1–2. The Court disagrees. Defendants initially moved to dismiss Count I, arguing that—on the face of the complaint—Gelb lacked standing, failed to state a claim, and had filed his case in the wrong district. ECF 16. In their cross-motion for summary judgment, Defendants argue that they are also entitled to judgment as a matter of law on Count I because (among other reasons) there is no genuine dispute of material fact that Gelb lacks standing and that the alleged check-cancelling policy at issue does not exist. *See* ECF 24. Defendants' reply addresses those same concerns and raises arguments in response to Gelb's opposition to their motion for summary judgment. *See* ECF 30 at 8. Having filed their own motion for summary judgment, Defendants were entitled to file a reply in support of that motion. *See also* Jan. 22, 2024 Minute Order (granting consent motion to modify briefing schedule and ordering Defendants to file a reply in support of their cross-motion for summary judgment);

Feb. 5, 2024 Minute Order (same). The Court thus concludes that Defendants' reply, ECF 30, is not an improper surreply.

Gelb also asks the Court to strike Defendants' cross-motion for summary judgment, arguing that it "is defective and invalid since Defendants did not file an actual Motion in support of their cross-motion for Summary Judgment." ECF 31 at 13. But Defendants complied with this Court's order to "file in a single submission their (i) reply in support of motion to dismiss, (ii) opposition to Plaintiff's motion for summary judgment, and (iii) motion for summary judgment." Nov. 20, 2023 Minute Order; *see* ECF 24 (the "February 2024 filing"). The document Defendants filed clearly put Gelb on notice that Defendants were cross-moving for summary judgment. *See* ECF 24 at 1. Additionally, the day after Defendants filed their cross-motion for summary judgment, the Court issued a *Neal* order informing Gelb that Defendants had moved for summary judgment, identifying the ECF number of that filing, and advising Gelb of his obligations in responding to that motion. *See* ECF 26. Gelb filed his opposition to Defendants' cross-motion for summary judgment shortly thereafter. ECF 29. There can be no argument that Gelb lacked notice of Defendants' motion.

Gelb further argues that Defendants failed to respond to his statement of undisputed material facts in their February 2024 filing, ECF 24, and instead responded to his asserted facts for the first time in their reply, *see* ECF 30-1. He therefore asks this Court to strike that response, located at ECF 30-1, and consider his stated material facts as admitted. ECF 31 at 9. Gelb is correct that, although Defendants included their own statement of material facts in their February 2024 filing, they did not explicitly admit or deny Gelb's proffered facts. *See* ECF 24-1. In order to give Gelb a full and fair opportunity to respond to Defendants' statements, the Court permitted him to file a reply statement of material facts. *See* Nov. 18, 2024 Minute Order. Gelb did so, ECF 36, and

the Court considered his reply statement of facts in rendering its decision. Because the Court rectified any error and eliminated any prejudice to Gelb, there is no need for the Court to strike Defendants' response or consider Gelb's stated material facts as admitted.

Because Defendants' cross-motion for summary judgment and reply were not improper, and Gelb had the opportunity to respond to Defendants' belated response to his statement of material facts, the Court **DENIES** Gelb's motion to strike, ECF 31.

## B. FOIA Claim (Count II)

Gelb alleges that Defendants violated the FOIA by failing to produce records responsive to his March 2021 request. ECF 12 ¶¶ 111–12. Defendants argue that Gelb's request would require the agency to create new records (which the FOIA does not mandate), and that doing so would be unduly burdensome. ECF 24 at 32–35. Both parties cross-move for summary judgment on this issue. ECF 19; ECF 24.

The Court addresses two threshold issues before turning to the FOIA request itself: (1) the proper defendants for Gelb's FOIA claim, and (2) the relevance of the agency's belated denial letter. The Court then turns to the merits and concludes that there is no genuine dispute of material fact that the agency complied with the FOIA. Defendants are therefore entitled to summary judgment on Count II.

### 1. *Gelb cannot bring FOIA claims against individual officers*

As a threshold matter, Gelb sues the U.S. Department of Defense, the Defense Finance and Accounting Service, Secretary of Defense Lloyd Austin, and the Department of Defense's Chief FOIA Officer Joo Y. Chung. ECF 12 ¶¶ 31–34. But the FOIA provides a cause of action only against the agency, not against individual officers. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006). Defendants Austin and Chung are therefore entitled to judgment as a

matter of law on Count II. The remainder of the Court's FOIA analysis pertains only to the Department of Defense and DFAS, who are the proper defendants.

### 2. *The agency's belated denial letter does not impact the Court's analysis*

Gelb argues repeatedly that Defendants never sent him a denial letter. *See* ECF 19 at 68–69 ¶ 107; ECF 29 at 18–19. The agency admits that it failed to send Gelb a denial letter after his October 2021 phone call with Mr. Outlaw, and remedied that error only after Gelb filed this suit. *See* ECF 24-2 ¶¶ 24–28. Such an error is unfortunate, but it does not change the outcome here. Even where an agency makes no effort to respond to a FOIA request until after a suit is filed, such "dilatory conduct" does not automatically entitle the requester to the records he seeks. *See House v. DOJ*, 197 F. Supp. 3d 192, 200–01 (D.D.C. 2016). Rather, "if the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 189–90 (D.C. Cir. 2013). Defendants do not contest that Gelb has exhausted his administrative remedies. *See generally* ECF 24. The central issue before the Court is whether responding to Gelb's FOIA request would require the agency to create new records—a question the Court takes up below. Therefore, the agency's belated denial letter does not impact the merits of Gelb's FOIA claim. The Court turns to those merits now.

### 3. *The FOIA does not require the agency to create new records*

There is no genuine dispute of material fact that DFAS does not possess the record Gelb requested: a report of all stale-dated checks and EFT payments worth $100,000 or more, issued between 2017 and 2020, that remain uncashed. *See* ECF 12 at 27–28. In fact, as the Court explains below, the PIEE database Gelb asked the agency to search does not track the key piece of information he seeks: whether a check has been cashed. *See* ECF 24-9 ¶¶ 12–13. That information

is spread across as many as eight other (non-PIEE) databases. *See* ECF 24-10 ¶ 10. The central question, therefore, is whether the FOIA requires DFAS to create a computer program that obtains and synthesizes information from multiple databases to create a record that does not otherwise exist. The Court, applying binding D.C. Circuit precedent, concludes that it does not. Defendants are therefore entitled to summary judgment on Count II.

### a. DFAS does not possess the requested records

Gelb contends that "the data responsive to [his] FOIA request is in Defendants' PIEE database and Defendants[] have the report to comply with [his] FOIA request." ECF 19 at 39. But the agency has provided "reasonably detailed" declarations from FOIA Program Manager Gregory Outlaw and Lead Financial Specialist Bradley Kennedy stating that this is not the case. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see* ECF 24-2 (Outlaw Declaration); ECF 24-9 (Kennedy Declaration).[3] The Outlaw Declaration explains that Gelb's FOIA request sought records pertaining to stale checks, and DFAS reasonably determined that the Enterprise Solutions & Standards (ESS) Disbursing Office would be best suited to search for those records. ECF 24-2 ¶¶ 14, 16. The ESS Disbursing office initially indicated that it believed it was possible to obtain the requested files, but that doing so would be burdensome and costly. *Id.* ¶ 22. Therefore, before the agency conducted any search, it reached out to Gelb to ask whether he was willing to

---

[3] Gelb seems to argue that the Court should disregard Defendants' declarations altogether because "Defendants' counsel cannot manufacture a new administrative record as part of a post hoc litigation scheme." ECF 19 at 38; *see* ECF 29 at 17–18 (arguing that "[t]here is no administrative record in this case"). Gelb is correct that, in most cases challenging agency action pursuant to the Administrative Procedure Act (APA), judicial review is confined to the administrative record and "*post hoc* rationalizations" have no place. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); *see* 5 U.S.C. § 706. But FOIA cases work somewhat differently. "The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). By submitting declarations, Defendants are not manufacturing a new administrative record—they are complying with this Circuit's FOIA precedent. The cases Gelb cites to the contrary deal with agency denials of FOIA fee waivers, which operate differently. *See* ECF 29 at 13; 5 U.S.C. § 552(a)(4)(A)(vii) (providing that court's review of a fee waiver denial "shall be limited to the record before the agency").

pay the $4,608 in processing fees. *Id.* ¶¶ 15–19. Gelb confirmed that he was willing to pay those

fees, which Mr. Outlaw's office communicated to the ESS Disbursing Office. *Id.* ¶¶ 20–21.[4]

According to the Kennedy Declaration, the ESS Disbursing Office then reached out to

Disbursing Operations and Vendor Pay (which owns the PIEE system Gelb had asked the agency

to search). ECF 24-9 ¶¶ 5, 12. ESS learned from these subcomponents that "[t]he PIEE does not

track if U.S. Treasury checks were cashed . . . [and] does not capture data on whether checks and

EFT payments have cleared." *Id.* ¶ 12. Therefore, "[t]here is no information available in the system

on invoices actually paid that were not claimed (or if paid by check, the check was unclaimed)."

*Id.* ¶ 13.

In light of these declarations, which are accorded a presumption of good faith, there is no

genuine dispute that DFAS does not possess the report Gelb seeks and that the PIEE does not track

whether a check has been cashed. *See SafeCard Servs., Inc.*, 926 F.2d at 1200; ECF 24-9 ¶¶ 12–

13. Although the parties offer competing statements of material fact and Gelb designates various

facts as "disputed," *see, e.g.*, ECF 29 at 59–66; ECF 36, Gelb offers no competent evidence that

undermines Defendants' declarations. Gelb argues generally that Defendants' declarations "are all

false," ECF 29 at 15—but again, agency declarations are "accorded a presumption of good faith,

which cannot be rebutted by purely speculative claims," *SafeCard Servs., Inc.*, 926 F.2d at 1200.

He also submits two affidavits of his own, *see* ECF 19 at 47–72; ECF 29 at 38–58, which make

various statements about the agency's databases and technological capabilities, *see, e.g.*, ECF 29

---

[4] The agency exchanged this information with Gelb in compliance with federal regulations, which require the Department of Defense to notify FOIA requesters if estimated processing fees will exceed $25. *See* 32 C.F.R. § 286.12(f). The agency's April 15 notice was not, as Gelb seems to argue, an offer to form a contract with him to produce records. *See* ECF 29 at 14–15. Rather, it was a condition precedent to the agency performing any work on the request. *See* 32 C.F.R. § 286.12(f)(2) ("When a requester is notified that the actual or estimated fees are in excess of $25.00, the request will not be considered received and further work will not be completed until the requester commits in writing to pay the actual or estimated total fee."). But even if the agency had formed a contract with Gelb to process responsive records, it is not clear how that would help his case. This is a suit under the FOIA to assess whether the agency has complied with the statute's requirements, not a suit for breach of contract.

at 46. But Gelb is not an agency employee, and he does not explain how he has personal knowledge of DFAS's internal databases or record-keeping practices. *See* Fed. R. Civ. P. 56(c)(4) (requiring that affidavits or declarations at summary judgment "must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated"); *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (holding that personal knowledge requirement "is unequivocal, and cannot be circumvented"); *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 141 n.10 (D.D.C. 2015) (declining to rely on declaration by plaintiff's "search expert" in FOIA case because the expert "is not a[n agency] employee, and he does not aver that he has ever worked at [the agency]"). Gelb's own beliefs about what records the agency maintains are not evidence, even if they are packaged in an affidavit. *See Londrigan*, 670 F.2d at 1174 ("An affidavit based merely on information and belief is unacceptable.").

Gelb also includes in his affidavit a screenshot of "a report from My Invoice Manual." ECF 19 at 66; ECF 36 ¶ 12. MyInvoice is the system DFAS uses to search the PIEE database. ECF 24-10 ¶¶ 3–4. The report depicted in the screenshot includes a "Status" column, which identifies each invoice visible in the report as "PAID." *See* ECF 19 at 66. According to Gelb, this screenshot "confirm[s] the data responsive to Plaintiff's FOIA request is in Defendants' PIEE database and Defendants[] have the report to comply with Plaintiff's FOIA Request." *Id.*; *see* ECF 36 ¶ 12. Even assuming this screenshot accurately captures the agency's *internal* MyInvoice website, *see* ECF 24-10 ¶ 3, it does not help Gelb's case. Defendants' declarations explain that an invoice might be listed as "paid" in MyInvoice although the check remains unclaimed:

> [T]he PIEE does not capture data on whether checks and EFT payments have cleared. It can only provide data on invoices that have been paid, or invoices that have not been paid due to a list of failures (e.g., errors on the contract, missing data on the invoice, etc.). There is no information available in the system on invoices

actually paid that were not claimed (or if paid by check, the check
was unclaimed).

ECF 24-2 ¶ 22; ECF 24-5 at 1. Gelb's screenshot is therefore immaterial.

In sum, there is no genuine dispute that the PIEE does not contain the data Gelb seeks.
Instead, Gelb asserts that the agency must create a computer program that can extract information
maintained across multiple databases to compile the report he requested. *See* ECF 29 at 12; ECF 36
¶¶ 14, 23. The Court turns to that issue now.

### b. *The agency need not create new records to perform an adequate search*

Gelb argues that "[i]n order to conduct an 'actual search' of Defendants' database for
records in response to [his] FOIA request, Defendants must create a computer program/quer[y]
necessary to do the search." ECF 29 at 12. Because Defendants admit that they did not do so, Gelb
claims that DFAS did not comply with the FOIA. *Id.* Defendants counter that fulfilling Gelb's
request would compel the agency to create new records, which the FOIA does not require and
which would be unduly burdensome. ECF 24 at 34–36. The Court agrees with Defendants that
Gelb's request would require the creation of new documents, and that the FOIA does not compel
the agency to do so. The Court therefore need not address whether fulfilling Gelb's request would
be unduly burdensome.

"FOIA imposes no duty on the agency to create records." *Forsham v. Harris*, 445 U.S. 169,
186 (1980). The statute "only requires disclosure of documents that already exist, not the creation
of new records not otherwise in the agency's possession." *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406,
409 (D.C. Cir. 2020). "The FOIA also does not require agencies to conduct research by
'answer[ing] questions disguised as a FOIA request.'" *Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d
233, 269 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020) (quoting *Hudgins v. IRS*, 620 F.
Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987)).

When a plaintiff requests aggregate data from an electronic database, it can be particularly difficult to draw the line between searching for records (required) and creating records or analyzing data (not required). *See id.* at 270. As another court in this District has explained, "[a]lthough the E–FOIA Amendments condone 'the application of codes or some form of programming to retrieve the information' contained in an electronic database," the amendments provide no guidance "on when the manipulation of data points in an electronic database through [programming] crosses the all-important line between searching a database, on the one hand, and either creating a record or conducting research in a database on the other." *Id.* at 270–71. And, as Gelb points out, "[a]lthough accessing information from computers may involve a somewhat different process than locating and retrieving manually-stored records, these differences may not be used to circumvent the full disclosure policies of the FOIA." ECF 29 at 14 (quoting *Inst. for Just. v. IRS*, 941 F.3d 567, 571 (D.C. Cir. 2019)). But, although close questions may arise in this area of FOIA litigation, the D.C. Circuit's decision in *National Security Counselors v. Central Intelligence Agency*, 969 F.3d 406 (D.C. Cir. 2020), makes this case a straightforward one. Under the standard articulated in *National Security Counselors*, Gelb asks for more than a database search—he asks the agency to collect information from multiple databases and create a new record synthesizing that information. The FOIA does not require Defendants to do so.

In *National Security Counselors*, plaintiffs asked the CIA for "a listing of all FOIA requesters from fiscal years 2008 to 2010 organized under each of four fee categories contemplated by FOIA." *Id.* at 408. The agency submitted a declaration stating that, because "fee category is not a mandatory field in CIA's current electronic FOIA records system," the agency would have to "individually review each FOIA request submitted from 2008 to 2010 and manually sort thousands of requests based on fee category" to fulfill the plaintiff's request. *Id.* at 409. The D.C. Circuit held

that such "manual review and sorting of numerous electronic records and the ensuing compilation of lists that do not otherwise exist . . . self-evidently amounts to records creation, which FOIA does not require." *Id.*

Defendants face a similar conundrum here. Gelb requests all "stale-dated outstanding check lists . . . issued and payable in the years 2017, 2018, 2019, 2020," with a value of $100,000 or more, and "any Electronic Fund Transfer (EFT) payments that were made or were attempted and failed" during this period. ECF 12 at 27–28. He also asks that the agency "eliminate from this list, any checks or electronic payments that have been actually paid or re-issued." *Id.* Gelb's FOIA request specified that the agency should search its PIEE database for these records. *Id.* But, as the Kennedy Declaration explains, the PIEE database (much like the CIA's records system in *National Security Counselors*) does not capture the key piece of information he seeks: "whether checks and EFT payments have cleared." ECF 24-9 ¶ 12. Defendants submitted a declaration from DFAS Lead Financial Management Analyst Bryan Harper explaining that, to determine whether any single invoice in the PIEE—among the millions of invoices contained in that database, *see* ECF 24-10 ¶¶ 4–7—actually refers to an uncashed check, an employee would have to (1) determine which of eight (non-PIEE) databases might contain that information, (2) obtain credentials for and/or log in to that database, and (3) review the payment information in that database to determine whether that invoice or check was in fact cashed. ECF 24-10 ¶ 10. And the result of that process, as in *National Security Counselors*, would be the "compilation of [a] list[] that do[es] not otherwise exist," 969 F.3d at 409: a list of checks and EFT payments that the agency has manually cross-checked against as many as eight other databases to determine that those payments remain outstanding. The FOIA does not require the agency to create this new record, whether by performing these tasks manually or creating a computer program that can do so. *See*

*id.*; *Reclaim the Recs. v. U.S. Dep't of State*, No. 23-CV-1471, 2024 WL 3728979, at *7 (S.D.N.Y. Aug. 7, 2024) (concluding that plaintiffs' request required the creation of new records where "the Department would have to run hundreds of [database] searches, verify the results by cross-checking them with the physical index cards, [and] stitch each incomplete list of search results together").[5]

\* \* \*

The PIEE database does not track the key piece of information Gelb seeks: whether a check has been cashed. Finding that information would require the agency to review millions of invoices in the PIEE and conduct a miniature research project on each invoice—searching as many as eight additional databases in the process—to determine whether that invoice represented an uncashed check. *See* ECF 24-9 ¶¶ 12–13. The result of compiling that information would be a record that does not otherwise exist. Because the FOIA does not require the agency to create new records, Defendants have complied with the FOIA and are entitled to summary judgment on Count II.

## C. Constitutional Claims (Count I)

The Court now turns to Gelb's constitutional claims. Gelb alleges that Defendants "[a]utomatically . . . cancel all checks that remain outstanding six (6) months after the date of issuance, without any notice to the payee who is the owner ("Owner") of the canceled checks proceeds or money outstanding," in violation of the Constitution's Due Process and Takings Clauses. ECF 12 ¶¶ 43–47. Defendants move to dismiss this claim for lack of standing, improper venue, and failure to state a claim, ECF 16, and move in the alternative for summary judgment, ECF 24. (In support of their motion for summary judgment, Defendants include a declaration

---

[5] The cases Gelb cites to the contrary, *see* ECF 29 at 13–14 (citing *Schladetsch v. HUD*, No. 99-CV-0175, 2000 WL 33372125 (D.D.C. Apr. 4, 2000); *Ctr. for Investigative Reporting v. DOJ*, 14 F.4th 916 (9th Cir. 2021); and *ACLU Immigrants' Rights Proj. v. ICE*, 58 F.4th 643 (2d Cir. 2023)), are not binding on this Court and do not override the D.C. Circuit's decision in *National Security Counselors*.

stating that the alleged check-cancellation policy does not exist. ECF 24-11 ¶¶ 7–9.) Gelb cross-moves for summary judgment in his favor. ECF 19. Because Gelb lacks standing, the Court will dismiss Count I pursuant to Rule 12(b)(1) and need not reach the parties' arguments for summary judgment.

Gelb does not claim that he was personally subject to Defendants' alleged check-cancelling policy. Rather, he is "an independent money finder" who for 25 years has "specialize[d] in finding persons to whom the Government owes money and helping these persons obtain the funds to which they are entitled." ECF 12 ¶ 57. Gelb therefore seeks to assert third-party standing on behalf of the uncashed check recipients (the "Owners")—his potential customers. To do so, he "must show that he has standing under Article III, *and* that he satisfies third party . . . standing requirements." *Lepelletier v. FDIC*, 164 F.3d 37, 42 (D.C. Cir. 1999) (emphasis in original); *see Kowalski v. Tesmer*, 543 U.S. 125, 128–29 n.2 (2004) (considering whether plaintiffs alleged third-party standing, and assuming without deciding that they had independent Article III standing). Article III standing has three requirements: the plaintiff "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Third-party standing has two additional requirements: "the litigant must have a close relation to the third party . . . and there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991). There are a number of potential flaws with Gelb's theory of standing, but the Court need only

address one: redressability. Because Gelb has not established this required ingredient of Article III standing, the Court will dismiss Count I for lack of subject matter jurisdiction.[6]

To establish redressability, Gelb must show that it is "likely, as opposed to merely speculative, that [his] injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Gelb's asserted injury is that he has lost the "opportunity to develop a business relationship with Owners who have unclaimed money outstanding," because the Owners are not aware that they have such outstanding checks. ECF 12 ¶ 59; ECF 19 at 29. But the remedy for the alleged constitutional violation—canceling Owners' checks without notice—would be to provide notice to the *Owners*, not to Gelb. *See* ECF 12 at 24 (asking that the Court "[o]rder Defendants to send notices to the Owners of unclaimed money, prior to being deprived of their money"). Then, as another court found in a similar case filed by Gelb, "the Owners would, first, have to decide to attempt to claim the property; second, decide to seek out a property recovery service; and third, seek out Gelb's particular service." *Gelb*, 2016 WL 4532193, at *5. Such an attenuated series of events that "depends on the unfettered choices made by independent actors not before the court[]" is far too speculative to establish redressability. *Lujan*, 504 U.S. at 562 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)); *see Gelb*, 2016 WL 4532193, at *5.

Gelb argues that he has standing under *Lepelletier*, in which the D.C. Circuit held that a money finder had Article III and third-party standing to sue the Federal Deposit Insurance Corporation (FDIC) for "the release of the names of depositors with unclaimed funds." 164 F.3d at 39, 45; *see* ECF 19 at 18, 27. Defendants counter that *Lepelletier* was abrogated by the Supreme

---

[6] Because Gelb lacks Article III standing, the Court need not assess whether he meets the additional requirements of third-party standing. The Court observes, however, that several other courts have dismissed similar claims brought by Gelb for (among other reasons) failure to establish third-party standing. *See Gelb v. Niblack*, No. 22-CV-2601, 2023 WL 5806111, at *2–4 (E.D.N.Y. Sept. 6, 2023); *Gelb v. DHS*, No. 15-CV-6495, 2017 WL 4129636, at *8 (S.D.N.Y. Sept. 15, 2017); *Gelb v. Fed. Rsrv. Bank of N.Y.*, No. 12-CV-4880, 2016 WL 4532193, at *3–4 (S.D.N.Y. Aug. 29, 2016).

Court's subsequent decision in *Kowalski*, which held that attorneys lacked third-party standing to sue on behalf of "hypothetical" clients. 543 U.S. at 127; *see* ECF 24 at 14–15. In the alternative, Defendants argue that *Lepelletier* is distinguishable. ECF 30 at 15. Because the Court resolves Defendants' motion on Article III standing grounds, rather than third-party standing, the Court need not decide whether *Lepelletier*'s statements about third-party standing remain good law. And, as explained below, the Court finds *Lepelletier* to be distinguishable when it comes to Article III redressability.

Lepelletier, like Gelb, was "an independent money finder." *Lepelletier*, 164 F.3d at 39. Like Gelb, his alleged injury was the "denial of the opportunity to develop a business relationship with depositors who have unclaimed deposits." *Id.* at 42. But unlike Gelb, Lepelletier argued that the Due Process Clause required something more than individual notice to depositors—he contended that the Constitution required "public disclosure of the depositors' names." *Id.* at 43; *see* ECF 12 at 24. Any remedy "short of full public disclosure," the D.C. Circuit explained, "would not appear to redress Lepelletier's injury, because he would not learn the names of parties with unclaimed deposits and, as a consequence, he would remain unable to contact those individuals in the hope of soliciting business from them." *Id.* That is precisely the redressability problem that Gelb faces here: even if DFAS sent notice to the Owners, Gelb "would remain unable to contact" the Owners because he would not himself be entitled to any notice. *Id.* Thus, Gelb cannot rely on *Lepelletier* to sustain his due process claim because he has requested a different remedy—one that would not redress his alleged constitutional injury—and he has made no argument that the Constitution requires Defendants to disclose the Owners' identities to him or to the general public.

Finally, Gelb cannot borrow standing from his FOIA claim. Gelb states that he "personally suffered an injury in fact when Defendants improperly withheld Owner records responsive to [his]

20

FOIA Request" and that releasing those records would redress that injury. ECF 29 at 42. That describes Gelb's alleged injury and requested remedy as to his FOIA claim, not his constitutional claim. A plaintiff "must demonstrate standing for each claim he seeks to press," and Gelb has not done so here. *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). And, regardless, the Court has already determined that Defendants did not improperly withhold records in violation of the FOIA. Count I is therefore **DISMISSED** for lack of subject matter jurisdiction.

*    *    *

For the foregoing reasons, Defendants' motion to dismiss Count I, ECF 16, is **GRANTED**; Defendants' cross-motion for summary judgment, ECF 24, is **GRANTED** as to Count II; Plaintiff's cross-motion for summary judgment, ECF 19, is **DENIED**; and Plaintiff's motion to strike, ECF 31, is **DENIED**. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: January 8, 2025